# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

PATRICK PENDLETON                                                       MOVANT

V.                                                                               NO. 4:17-CV-27-DMB
                                                                                     (4:15-CR-76-DMB-JMV)

UNITED STATES OF AMERICA                              RESPONDENT

## MEMORANDUM OPINION AND ORDER

Before the Court is Patrick Pendleton's "Motion Under 28 U.S.C § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody." Doc. #64.[1]

## I
## Procedural History

On June 26, 2015, Patrick F. Pendleton was named in two-count indictment charging him with one count of conspiracy to commit healthcare fraud (Count One) and one count of healthcare fraud (Count Two). Doc. #1.

### A. Change of Plea

On December 16, 2016, Pendleton, pursuant to a plea agreement in which the Government agreed to dismiss Count Two at the conclusion of sentencing, pled guilty to Count One. Doc. #37; Doc. #39. At his plea hearing, Pendleton admitted that he conspired with Sandra Livingston, Lara Thompson, and others known and unknown to the grand jury, to defraud a healthcare benefit program. Doc. #71 at 8, 15, 21; *see also* Doc. #1 at ¶ 9. Pendleton also agreed with the Government's factual basis for the plea, which stated that Pendleton was a patient recruiter for numerous hospice providers who "solicited and recruited potential hospice patients in the Northern District of Mississippi, including Bolivar County, Mississippi, who were not

---
[1] Although this § 2255 action exists as an independent cause of action, all relevant documents were filed in the related criminal action (4:15-cr-76). Unless otherwise specified, all record citations refer to the criminal docket.

hospice appropriate in return for a per-patient fee paid by the hospice providers that received the recruited patients." Doc. #71 at 14–17. At the conclusion of the plea hearing, the Court accepted Pendleton's plea agreement and related plea supplement. Of relevance here, the plea supplement provides:

> the defendant hereby expressly waives all rights of appeal as to any and all issues in this case, ... as well as all rights to contest or collaterally attack the conviction and/or sentence, and the manner in which the sentence was imposed, in any post-conviction proceeding, including but not limited to a motion brought pursuant to 28 U.S.C. § 2255; except to claims relating to prosecutorial misconduct and ineffective assistance of counsel. This waiver is made in exchange for the concessions made by the United States in this Plea Agreement.

Doc. #38 at 3.[2]

### B. Sentencing Documents

The Pre-Sentence Investigation Report ("PSR") prepared by the United States Probation Service stated, among other things, that "according to case material, the defendant ... utilized others (e.g., Marvin 'Shawn' Pendleton, Roy Milton Neal, and Tori Beth McClain), who under the defendant's direction recruited patients or assisted with patient recruitment." Doc. #59 at ¶ 14. Based on this stated role of Pendleton in the conspiracy, the PSR included a three-point enhancement of Pendleton's offense level under § 3B1.1(b) of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") for Pendleton's leadership role in the offense. Doc. #59 at ¶ 30. With this enhancement, Pendleton's calculated Guidelines range in the PSR was 33 to 41 months. *Id*. at ¶ 79.

On March 22, 2016, the Government filed a motion for downward departure under the Guidelines. Doc. #44. Pendleton submitted a sentencing memorandum the next day. Doc. #45.

---

[2] The plea supplement, as well as the Pre-Sentence Investigation Report and the motion for downward departure discussed below, were filed under seal. Doc. #38; Doc. #59; Doc. #44. The PSR and the motion for downward departure are referenced in Pendleton's § 2255 memorandum and the Government's response thereto, neither of which were filed under seal. *See* Doc. #65; Doc. #69. The substance of the plea supplement's appeal waiver was raised by Pendleton in his reply, which also was not filed under seal.

2

### C. Sentencing Hearing

On May 3, 2016, Pendleton appeared before the Court for sentencing. Doc. #53. At his sentencing hearing, Pendleton raised an objection to the three-point enhancement to his Guidelines offense level.[3] Doc. #72 at 5–11. Pendleton conceded that he supervised one individual (McClain) but argued that because the Indictment only set forth that he conspired with Sandra Livingston and Lara Thompson, the three-point enhancement requiring five or more participants should not apply. *Id*. at 11, 13–14. Additionally, during his statement, Pendleton's counsel remarked: "[Pendleton] does the patient recruiting. He gets people under him. Now he is a supervisor. He's working for a couple of people. He has a couple of people working for him." *Id*. at 37.

After hearing the parties' arguments, the Court overruled Pendleton's objection to the leadership enhancement, adopted the PSR as its findings of fact, and held that based on the factual basis underlying Pendleton's guilty plea and the undisputed facts in the PSR, the three-point enhancement was justified. *Id*. at 15, 17. The Court granted the government's motion for downward departure based on Pendleton's substantial assistance, noting that an upward variance would have been justified otherwise, and sentenced Pendleton to a 40-month term of imprisonment. *Id*. at 45. On the Government's motion, the Court then dismissed Count Two of the indictment. *Id*. at 48.

Pendleton did not object to his sentence or pursue a direct appeal. However, on or about February 24, 2017, Pendleton filed the instant § 2255 motion, acting pro se. Doc. #64. The Government responded on April 26, 2017. Doc. #69. Pendleton replied on or about May 5, 2017. Doc. #70.

---

[3] Objections to the PSR were due by March 16, 2016. Doc. #40 at 1. The Government agreed to waive any objection to Pendleton's tardiness in raising the objection to the PSR. Doc. #72 at 10–11.

# II
# Analysis

Pursuant to 28 U.S.C. § 2255:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C § 2255(a). In his motion, Pendleton argues that the Court should have granted his objection to the three-point enhancement and should have provided him with a reduction for his allegedly minor role in the offense. Doc. #65. The Government argues that these claims are procedurally barred and fail on the merits. Doc. #69.

### A. Procedural Bar

"If a § 2255 movant failed to raise a claim on direct appeal, he may not raise it on collateral review unless he shows cause and prejudice or that he is actually innocent." *United States v. Scruggs*, 691 F.3d 660, 666 (5th Cir. 2012). "The cause standard requires [a movant] to show that some objective factor external to the defense prevented him from raising on direct appeal the claim he now advances." *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996) (internal quotation marks omitted). While the Fifth Circuit has not articulated an exhaustive list of sufficient causes, it has observed that "[o]bjective factors that constitute cause include interference by officials that makes compliance with the procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel at the prior occasion, and ineffective assistance of counsel in the constitutional sense." *Id*. "To establish prejudice, a petitioner must show that, but for the alleged error, the outcome of the

proceeding would have been different." *Foxx v. Mississippi*, No. 4:14-cv-85, 2015 WL 1321500, at *2 (N.D. Miss. Mar. 24, 2015) (citing *Pickney v. Cain*, 337 F.3d 542, 545 (5th Cir 2003)).

Pendleton does not dispute that he failed to raise the claims at issue here on direct review. However, he argues he had cause for failing to file a direct appeal because: (1) his plea agreement prohibited an appeal; (2) Amendment 794 on which he now relies, which went into effect approximately six months before sentencing,[4] was not ruled to be retroactive until after he was sentenced; and (3) at his sentencing hearing, "the government made it clear that if Mr. Pendleton argues the minor role adjustment 'then your honor Mr. Pendleton is not accepting responsibility' …." Doc. #70 at 2–4.

First, "[a] waiver of appeal provision in a ... plea agreement does not constitute 'cause' for failing to take a direct appeal." *Lare v. United States*, No. 04-cv-4939, 2005 WL 1076005, at *2 (E.D.N.Y. May 4, 2005) (citing *United States v. Pipitone*, 67 F.3d 34 (2d Cir. 1995)); *see United States v. Smith*, 113 F.Supp.2d 879, 898 (E.D. Va. 1999) ("Smith's plea agreement waived her right to appeal and her notice of appeal was dismissed by the court of appeals on those grounds. Other courts have found that this is not sufficient 'cause' for a petitioner's procedural default.") (collecting cases). Second, because generally a court must apply the version of the sentencing guidelines effective at the time of sentencing, *United States v. Myers*, 772 F.3d 213, 218 (5th Cir. 2014), uncertainty regarding retroactivity of Amendment 794 could not provide cause for Pendleton's failure to raise on direct appeal issues related to the amendment's effect. Third, the sentencing transcript does not reflect the statement attributed to the Government's counsel; however, even if the Government made such a statement, it would not have prevented Pendleton from raising the defense on direct appeal. The Court concludes

---

[4] Sentencing Guidelines for United States Courts, 80 Fed. Reg. 25,782, 25,782 (May 5, 2015) (stating that Amendment 794 was effective on November 1, 2015).

therefore that Pendleton has not shown cause for his failure to raise his claims on direct appeal and that, because he has raised no claim of actual innocence, his claims are procedurally barred. *See Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) ("The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown.").

### B. Merits Determination

While a court is generally precluded from reaching the merits of a procedurally defaulted claim, it may conduct a brief merits analysis out of "an abundance of caution." *Soria v. Johnson*, 207 F.3d 232, 249 (5th Cir. 2000). Accordingly, the Court, notwithstanding Pendleton's procedural default, will briefly address the sentencing issues raised by the § 2255 motion.

#### 1. Three-Point Enhancement

Under § 3B1.1(b) of the Guidelines, a defendant's base offense level may be increased by three levels "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." To warrant an adjustment under this provision, a defendant must "be an organizer, leader, manager, or supervisor of one or more other participants." *United States v. Ochoa-Gomez*, 777 F.3d 278, 282 (5th Cir. 2015) (internal quotation marks omitted). "A 'participant' includes anyone 'who is criminally responsible for the commission of the offense.' This can include individuals not convicted, but excludes undercover officers." *Id.* at n.1 (internal citation omitted). In making factual determinations under this (or any) section of the Guidelines, "a district court may base its findings on any information that has a sufficient indicia of reliability to support its probable accuracy." *Id.* at 282 (internal quotation marks omitted). "A PSR generally bears sufficient indicia of reliability for this purpose." *Id.*

6

As explained above, this Court ruled in accordance with the PSR that a § 3B1.1(b) enhancement applied to Pendleton's offense level. In his motion, Pendleton argues that the enhancement should not have applied because he: (1) was listed "at the bottom of the indictment;" (2) was a "runner" in the scheme and runners "were paid commission and were working independently and equal to each other;" (3) "was less culpable than those in charge;" (4) had no contact with the people in charge of the scheme; and (5) did not supervise five individuals. None of Pendleton's objections relate to the proper inquiry under § 3B1.1(b), which allows for an enhancement where a defendant's criminal activity involved at least five participants and the defendant supervised at least *one* of the participants. *Ochoa-Gomez*, 777 F.3d at 282.

Here, the PSR identified the involvement of five other individuals in the criminal scheme: Sandra Livingston, Lara Thompson, Marvin "Shawn" Pendleton, Roy Milton Neal, and Tori Beth McClain. Doc. #59 at ¶¶ 2, 12, 14. The PSR stated, and Pendleton does not dispute, that Pendleton supervised McClain or that McClain was a participant in the relevant criminal activity. Accordingly, the Court did not err when it applied the supervisory enhancement.[5]

### 2. Minor or Minimal Role Reduction

Section 3B1.2 of the Guidelines provides that a defendant's offense level should be decreased by four levels if he "was a minimal participant in any criminal activity" and by two levels if he "was a minor participant in any criminal activity." A court may decrease an offense level by three levels "[i]n cases falling between" minimal and minor participation. U.S.S.G. § 3B1.2. The notes to the Guidelines define a minimal participant as a defendant who is "plainly

---

[5] To the extent § 3B1.1(b) provides that a defendant's base offense level also may be increased by three levels "[i]f the defendant was a manager or supervisor … and the criminal activity … was otherwise extensive," the Court, based on the facts reported in the PSR and presented at the hearing, along with the considerations the Court articulated before pronouncing sentence, also finds Pendleton's criminal conduct extensive.

7

among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2, comment n.4. A minor participant is intended to encompass a defendant "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." *Id.* at § 3B1.2, comment n.5. To be entitled to an adjustment under § 3B1.2, a defendant must show "by a preponderance of the evidence that the adjustment [is] warranted." *United States v. Castro*, 843 F.3d 608, 612 (5th Cir. 2016).

> Comment 3(c) to § 3B1.2 states:
>
> The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case.
>
> In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:
>
> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
> (v) the degree to which the defendant stood to benefit from the criminal activity.
>
> For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.
>
> The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

In arguing that he was entitled to a reduction under § 3B1.2, Pendleton contends that he "was a paid runner of commissions and taking orders from his superiors and not giving orders to others as The Government alleges and advised ...." Doc. #65 at 12. Pendleton submits that he

8

"reported directly to [the nurses involved in the scheme] when he recruited a patient for Hospice Care and as a runner he was similarly situated as to other runners like him and less culpable than those above him and were paid salaries by the company owners." *Id*.

To the extent Pendleton collected Medicaid information for the known purpose of passing it along for false billing, it is clear he understood the scope and structure of the criminal activity involved here. Additionally, while Pendleton may not have been involved in the actual fraudulent billing, he clearly exercised significant discretion and authority in obtaining the information necessary for such billing, including hiring and supervising at least one underling. Finally, contrary to his assertion, Pendleton had a proprietary interest in the criminal activity, as it is undisputed that Pendleton was paid a commission for each fraudulent patient brought into the scheme. In this regard, Pendleton's payments were directly related to the growth of the criminal operation. Under these circumstances, in addition to the considerations articulated by the Court at the sentencing hearing, the Court concludes that Pendleton was not (and is not) entitled to a reduction under § 3B1.2.

## III
## Certificate of Appealability

This Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts. Pendleton must obtain a COA before he may appeal the denial of his § 2255 motion. 28 U.S.C.§ 2253(c)(1)(B). A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For cases rejected on their merits, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to warrant a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see United States v. Jones*, 287 F.3d 325, 329 (5th

Cir. 2002) (applying *Slack* to COA determination in § 2255 proceeding).  To obtain a COA on a claim that has been rejected on procedural grounds, a movant must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.  Based on the *Slack* criteria, the Court finds that a COA should not issue in this case.

## IV
## Conclusion

For the above reasons, Pendleton's § 2255 motion [64] is **DENIED**.  A certificate of appealability is also **DENIED**.

**SO ORDERED**, this 7th day of August, 2017.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**